**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MERIMA GVOZDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 10-CV-4595 |
| | ) | |
| MILL RUN TOURS, INC., ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions to dismiss the claims of Plaintiff Merima

Gvozden filed by Defendants Mill Run Tours, Inc., Jimmy Daher, and Pierre Azzi (collectively

"Mill Run Defendants") and by Defendants Village of Lincolnwood and Officer Schenita

Stewart ("collectively "Lincolnwood Defendants").[1]  In her complaint, Plaintiff brings claims for

false arrest/false imprisonment (Count I), malicious prosecution (Count II), intentional infliction

of emotional distress (Count III), conspiracy (Count IV), and "violation of 42 U.S.C. § 1983"

(Count V).  For the following reasons, the Court grants in part and denies in part Defendants'

motions to dismiss [18 & 23].  With respect to the Mill Run Defendants' motion [18], the Court

dismisses without prejudice Counts IV and V.  With respect to the Lincolnwood Defendants'

motion [23], the Court dismisses without prejudice Counts I and IV.  Plaintiff's state-law false

arrest, malicious prosecution, and intentional infliction of emotional distress claims remain

---

[1]  There are two related cases pending before the Court.  With the exception of Plaintiff Nagi Tabet's additional claims for breach of contract and conversion in Case No. 10-CV-4606, the legal claims of Plaintiffs Gvozden and Tabet are largely without material differences.  However, because Plaintiffs' complaints arise under slightly different factual circumstances, the Court will address the motions to dismiss Plaintiff Tabet's claims in a separate order.

pending as to the Mill Run Defendants,[2] and her malicious prosecution, intentional infliction of emotional distress, and 42 U.S.C. § 1983 false arrest claims remain pending as to the Lincolnwood Defendants.

## I.    Background

Defendant Mill Run Tours, Inc. ("Mill Run") is a ticket facilitator/air travel wholesaler that obtains airline tickets at bulk rate prices directly from airlines and resells those tickets to travel agencies for a profit. Plaintiff Merima Gvozden worked for Defendant Mill Run Tours, Inc. ("Mill Run") as a ticket agent from 1997 until June 2006, when she went to work for one of Mill Run's competitors. Plaintiff Nagi Tabet worked for Mill Run from approximately 1988 to June 2006, when he too went to work for a competitor. Defendant Jimmy Daher was the manager of the Chicago office of Mill Run. Defendant Pierre Azzi was a supervisor and agent for Mill Run, based out of the New York office.

According to the complaint, on or about June 18, 2008 and prior to that date, Defendant Daher spoke to Lincolnwood Police Detective (and Defendant) Schenita Stewart and alleged that Plaintiffs had fraudulently and criminally converted money that belonged to Mill Run. Daher alleged that Plaintiffs (both Gvozden and Tabet), while employed by Mill Run, diverted Mill Run business to separate companies and affected the profits of Mill Run. According to the

---

[2]  Because a federal claim remains pending against the Lincolnwood Defendants, dismissal of Plaintiff's state law claims against the Mill Run Defendants is not proper at this time. Section 1367(a) of Title 28 provides that where a district court has original jurisdiction over a claim, the court "shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," including "claims that involve the joinder or intervention of additional parties," 28 U.S.C. § 1367(a), unless original jurisdiction arises under § 1332 (see 28 U.S.C. § 1367(b)). Section 1983 provides federal question jurisdiction over Plaintiff's claim against the Lincolnwood Defendants, and Plaintiff's state law claims against the Mill Run Defendants (and the Lincolnwood Defendants) indisputably are part of the "same case or controversy" as the federal claim. It follows that supplemental jurisdiction lies over the Plaintiff's state law claims against the Mill Run Defendants. See, e.g., *U.S. Bank N.A. v. Erakovich*, 2010 WL 4877011, at *2 (N.D. Ill. Nov. 24, 2010).

complaint, Defendant Azzi caused and authorized Daher to accuse Plaintiffs of criminal acts. Specifically, Plaintiffs were accused of devising a scheme to transmit, by electronic communication, a signal to Mill Run containing "orders for airline tickets from Chicago M&M, knowing that Chicago M&M was not a travel agency." Based on Daher's statements, on June 18, 2008, Defendant Stewart signed a criminal complaint against Plaintiffs, and Plaintiffs were arrested.

Based upon Daher's statements, Detective Stewart investigated Plaintiffs' participation in the alleged criminal activity. During that investigation, Defendant Stewart interviewed Plaintiff Gvozden and reported that Gvozden "admitted" that she had fraudulently diverted sales from Mill Run in retaliation for denying her a raise. According to Plaintiff Gvozden's complaint, she never made that "admission." Plaintiff alleges that the Lincolnwood Defendants failed to properly investigate the allegations, and that, if they had, they would have determined that the claims made by Mill Run and its agents were false. According to the complaint, the failure to investigate was done in furtherance of a conspiracy to deprive Plaintiffs of their rights.

At the Grand Jury proceeding, Stewart testified regarding the allegations made to her by Daher as well as her interview with Plaintiff Gvozden. As a result of Stewart's testimony, Plaintiffs were indicted. Plaintiffs also allege that they were taken into custody and placed in jail cells, but neither complaint alleges the duration of their custody. At the conclusion of a criminal trial in May 2010 in the Circuit Court of Cook County, Plaintiffs were acquitted of all charges. Shortly thereafter, on June 10, 2010, Plaintiff Gvozden filed a five-count complaint in the Circuit Court of Cook County, alleging a variety of state and federal claims. Specifically, Gvozden alleges false arrest/false imprisonment (Count I), malicious prosecution (Count II), intentional

infliction of emotional distress (Count III), conspiracy (Count IV), and "violation of 42 U.S.C. § 1983" (Count V).

On July 23, 2010, the Lincolnwood Defendants removed the case to federal court. Defendants also removed Plaintiff Nagi Tabet's case from the Circuit Court of Cook County. The cases were assigned to different judges, and on August 20, 2010, the Lincolnwood Defendants moved to have Plaintiff Tabet's case reassigned from Chief Judge Holderman to this Court on the basis of relatedness. The Court granted the motion on September 7, 2010. On August 20, 2010, both sets of Defendants filed motions to dismiss Plaintiff Gvozden's claims.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III.    Analysis

The essential allegations in Counts I through V are that the Mill Run Defendants made statements to the police or in legal proceedings which resulted in the criminal prosecution of Plaintiffs, and that the Lincolnwood Defendants failed to investigate these allegations, resulting in the illegal arrest, prosecution, and continuing prosecution of Plaintiffs.  Plaintiffs have alleged one federal claim—a § 1983 claim for false arrest/false imprisonment—and the remaining claims for false arrest, malicious prosecution, intentional infliction of emotional distress, and conspiracy arise under state law.

### A.    Plaintiffs' claims against the Mill Run Defendants

#### 1.    42 U.S.C. § 1983

When a plaintiff brings a § 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private person or entity acted under the color of state law.  The requirement "sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law."  See *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999); *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 349-51 (1974).  Both the Supreme Court and lower federal courts have acknowledged the difficulty of determining whether a private entity has acted under the color of state law.  At its most basic level, the state action doctrine requires that a court find such a "close nexus between the State and the challenged action" that the challenged action "may be fairly treated as that of the State itself."  *Jackson,* 419 U.S. at 351, 95 S.Ct. 449 (citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 176 (1972)).

In *Rendell-Baker v. Kohn,* 457 U.S. 830 (1982), the Supreme Court wrote that "[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same

question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Id.* at 838 (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). In most cases, the state actor is an officer or employee of state government, and it is easy to conclude that the person's actions are fairly attributable to the state. However, the Court has long recognized that, on some occasions, the acts of a private party are fairly attributable to the state because the party has acted in concert with state actors. See *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170 (1970) (observing that "a State is responsible for the discriminatory act of a private party when the State, by its law, has compelled the act"); see also *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003) (stating that "defendants may be found to act under color of state law when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights"). In *Blum v. Yaretsky,* 457 U.S. 991 (1982), the Supreme Court held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1004. The Supreme Court has set forth several tests for courts to employ in evaluating the "range of circumstances" that might constitute state action. *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288, 295 (2001); see also *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823 (7th Cir. 2009) (noting that the four tests to determine whether a private party is a state actor are (1) the symbiotic relationship test (satisfied when private and public actors carry out a public function); (2) the state command and encouragement test (satisfied when the state requires the actions of the private actor); (3) the joint participation doctrine (satisfied when the private action is the same as the state action); and (4) the public function test (satisfied when private activity is fairly attributable to the state)). Nowhere in the complaint does Plaintiff allege that

the Mill Run Defendants were cloaked with any degree of state authority. See also *Case*, 327 F.3d at 566. Nor do the facts presented in the complaint support such a conclusion. Rather, the allegations in the complaint attempt to allege a conspiracy between state officials and the Mill Run Defendants.

In a case cited by Plaintiff, the Illinois Appellate Court stated that "the mere act of giving information to the police is insufficient in itself to constitute participation in an arrest." *Dutton v. Roo-Mac, Inc.*, 426 N.E.2d 604, 607 (Ill. App. Ct. 2d Dist. 1981); see also *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985) ("providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983). Here, Plaintiff's allegations that the Mill Run Defendants made false statements to police in order to prevent Gvozden from working for a competitor cannot serve as the grounds for a § 1983 claim against the Mill Run Defendants. See also *Shelton v. Schneider*, 2006 WL 59364, at *4 (N.D. Ill. Jan. 4, 2006) ("Nor can plaintiff's assertion that her arrest was predicated on defendant Schneider's criminal complaint of 'shear slander and fantasy' serve as the grounds for a § 1983 claim against defendant Schneider, because a private citizen cannot be considered a state actor simply by making a false complaint to the police, upon which the police act.").

Furthermore, "mere allegations of a conspiracy" are insufficient to demonstrate a concerted effort or plan between a private party and the state official and thus bare allegations of a conspiracy will not withstand a motion to dismiss a § 1983 claim filed against a private party. *Moore*, 754 F.2d at 1352; see also *Loubser v. Thacker*, 440 F.3d 439, 442-43 (7th Cir. 2006) (although a conspiracy need not be pled with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, "it differs from other claims in having a degree of vagueness that makes a bare claim of 'conspiracy' wholly uninformative to the defendant"). Instead, the

allegations must demonstrate that the state official and the private party "somehow reached an understanding to deny the plaintiffs their constitutional rights." *Id.*; see also *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) ("To establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents.").

Plaintiff Gvozden has failed to allege sufficient facts to demonstrate how the Mill Run Defendants were acting under color of state law when they made statements to the police. Nor are there any allegations that show an "agreement" between the Mill Run Defendants and the Lincolnwood Defendants, aside from Plaintiff's conclusory allegation that there was a "conspiracy." See, *e.g.*, *Sudduth v. Donnelly*, 2009 WL 918090, at *4 (N.D. Ill. Apr. 1, 2009) (dismissing § 1983 claim when other than statement that defendants "conspired" to deny plaintiff his constitutional rights, the complaint contained "no allegations that would demonstrate that the Ebay Defendants entered into an agreement with the other Defendants to deprive Sudduth of his constitutional rights"). For instance, it is not clear from Plaintiff's complaint exactly which private defendants and state actors acted in concert, whether the parties had a prior association, what agreement was made and why, and, most problematic, what specific acts were made in furtherance of the agreement. Without specific factual allegations as to each Defendant's participation in a concerted action to deprive Plaintiff of her rights, the Court cannot find any plausible basis even to infer that the acts of the Mill Run Defendants are fairly attributable to the state. At present, the allegations in Plaintiff's complaint establish only that the Mill Run Defendants made statements to a state actor, not that they were acting as state actors. Plaintiff's

bare allegations of a conspiracy, without any additional allegations which support a conspiracy theory, are insufficient to demonstrate the concerted action needed to show that the Mill Run Defendants were acting under color of state law.

###### 2. False arrest (state law)

Under Illinois law, to prevail on a false arrest claim, a plaintiff must prove that he "was restrained or arrested by the defendant and [that] the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." See *Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1231 (1990). When a police officer makes a false arrest, a plaintiff may recover against a private defendant who supplied information to that police officer if he can establish that the defendant "1) directed the officer to arrest the plaintiff or 2) procured the arrest by giving information that was the sole basis for the arrest." *Randall v. Lemke,* 726 N.E.2d 183, 186 (Ill. 2000).

In Plaintiff's complaint, she contends that Defendant Daher contacted police and told them that Gvozden had fraudulently and criminally converted money that belonged to Mill Run to another company. However, it is not clear from the complaint whether the Mill Run Defendants instructed Officer Stewart to arrest Plaintiff or directed or pressured Officer Stewart to swear out a complaint against her. A private defendant may be liable for false arrest if the defendant "participates" in making an arrest that is eventually found to be unlawful. *Odorizzi v. A.O. Smith Corp.,* 452 F.2d 229, 231-32 (7th Cir. 1971) (no false arrest if defendant does not "procure" the arrest, "command" that police make the arrest, or "campaign" to have defendant arrested). In other words, this is a factual determination, where the defendant can be liable for "directing" the illegal arrest but not for merely "giving information." See, *e.g., Doe v. City of Chicago,* 39 F. Supp. 2d 1106, 1113-14 (N.D. Ill. 1999) (no false arrest claim because defendant

described events that occurred leading to arrest and did not "request" that arrest be made). Because of the fact-specific nature of this inquiry, the Court concludes that dismissal of Plaintiff's state-law false arrest claim against the Mill Run Defendants is not proper at this time. However, the Court reiterates that merely providing police with information leading to an arrest is not generally a basis for false arrest liability.

Additionally, Plaintiff's current allegations at least arguably present a quandary. If Plaintiff's arrest was based solely on the information presented by the Mill Run Defendants to Officer Stewart, then Plaintiff may be able to proceed on a false imprisonment claim against the Mill Run Defendants—although Plaintiff still may be required to present evidence that the Mill Run Defendants "directed," "commanded," or "ordered" the arrest. See *Carey v. K-Way, Inc.*, 728 N.E.2d 743, 746-47 (Ill. App. Ct. 1st Dist. 2000) (noting that the more "difficult question is whether [defendants] 'procured'" the plaintiff's arrest" and that "merely giving information to the police is insufficient in itself to constitute participation in an arrest") ("In our view, even if Carey could show that the defendants were the sole source of the information relied upon by Canady in making the arrest, he would still have to show that they affirmatively instigated the arrest in some way."). But if that is the case, then Plaintiff likely cannot proceed on her 42 U.S.C. § 1983 claim against Officer Stewart, because Daher's statement would have given Officer Stewart probable cause to arrest Plaintiff. However, if Plaintiff's arrest was not based solely on Daher's statements to Stewart, but was based also on Stewart's alleged fabrication of an "admission" by Plaintiff that she had fraudulently diverted ticket sales, then Plaintiff will be hard-pressed to demonstrate that the Mill Run Defendants can be held liable for false arrest, although she may be able to proceed on her false arrest claim against Officer Stewart. Discovery on the actual timeline of events surrounding Plaintiff's arrest, questioning, the signing of a

complaint, and the Grand Jury indictment should shed light on these issues. See *Carey*, 728 N.E.2d at 748 ("The determination of whether a defendant's conduct constitutes an actual request that the plaintiff be arrested, encouragement for the plaintiff to be arrested or the mere giving of information must be made on a case-by-case basis").

### 3. *Malicious prosecution (state law)*

Under Illinois law, a plaintiff must establish five elements for a malicious prosecution claim: "(1) the commencement or continuance of an original or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such a proceeding; (4) the presence of malice; and (5) damages." *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 922 (7th Cir. 2001) (quoting *Swick v. Liautaud,* 411 N.E.2d 229, 231 (Ill. 1980)). The complaint satisfies the second element because Plaintiff was found not guilty at trial, and Plaintiff has alleged that she was damaged. With respect to the remaining elements, the Court concludes that its reasoning with respect to the false arrest claim applies with equal force: if Plaintiff can present evidence that the Mill Run Defendants "initiated the criminal proceeding or '[their] participation in it [was] so active and positive a character as to amount to advice and cooperation,'" then the Mill Run Defendants may be liable for malicious prosecution. *Logan,* 246 F.3d at 922 (quoting *Denton v. Allstate Ins. Co.,* 504 N.E.2d 756, 760 (Ill. App. Ct. 1987)). Although the allegations in the complaint are arguably inconsistent, pleading in that fashion is permitted. Fed. R. Civ. P. 8(d); see also *Moriarty v. Larry G. Lewis Funeral Directors Ltd.*, 150 F.3d 773, 777-78 (7th Cir. 1998) ("inconsistent pleading is permitted"). Drawing all reasonable inferences in favor of Plaintiff, she has fairly apprised the Mill Run Defendants of her malicious prosecution claim. As previously noted, discovery should clarify some of the inconsistencies in Plaintiff's complaint.

### 4. *Intentional infliction of emotional distress*

Plaintiff's complaint alleges that the Mill Run Defendants engaged in extreme and outrageous conduct when Daher contacted the police to report that Plaintiff had "fraudulently and criminally converted money that belonged to Mill Run to another company." Plaintiff alleges that the conduct exhibited by the Mill Run Defendants was "extreme and outrageous," "had a high probability that Plaintiff would suffer severe emotional distress," and caused Plaintiff to "suffer anxiety [] and severe emotional distress." The Mill Run Defendants assert that Plaintiff has failed to plead any factual allegation which amounts to extreme or outrageous conduct because "[a] private person making a report to the police and participating in criminal proceedings is not extreme and outrageous conduct."

Under Illinois law, to succeed on a claim of intentional infliction of emotional distress, a plaintiff must prove that (i) defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency, (ii) it resulted in emotional distress so severe that no reasonable person could be expected to endure it, and (iii) defendants intended to inflict this distress or were substantially certain that their conduct would result in severe distress. *Berkos v. Nat'l Broad. Co.,* 515 N.E.2d 668, 680 (Ill. App. Ct. 1st Dist. 1987). Whether conduct is extreme and outrageous is "evaluated on an objective standard based on all of the facts and circumstances." *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (Ill. App. Ct. 1st Dist. 3004). "Mere insults, indignities, threats, annoyances, petty oppressions, or trivialities" do not qualify as extreme and outrageous conduct. *Kolegas v. Heftel Broadcasting Corp.,* 607 N.E.2d 201, 211 (1992). Courts have granted motions to dismiss claims of intentional infliction of emotional distress when the court concludes that the conduct plaintiff alleges fails to rise to the level of "extreme and outrageous." See, *e.g., Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 438 (7th Cir. 2009) (affirming dismissal of

intentional infliction of emotional distress claim where conduct alleged by plaintiff did not rise to the level of extreme and outrageous).

The sole factual allegation that Plaintiff makes with respect to her intentional infliction of emotional distress claim is that Defendants falsely reported her conduct to the police. As Defendants note, a private person making a report to the police typically will not rise to the level of extreme and outrageous conduct. "Merely characterizing emotional distress as severe is not sufficient." *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 685 (Ill. App. Ct. 1st Dist. 1999). Indeed, the Illinois Appellate Court has found that conduct which resulted in a person's arrest, and subsequent refusal to drop charges, does not amount to extreme or outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 942 (Ill. App. Ct. 1st Dist. 1997). However, the appellate court was reviewing the claim after discovery and trial, not at the motion to dismiss stage. Although Plaintiff's allegations border on conclusory, given the stage of the proceedings and the inferences that could be drawn, the Court cannot conclude that she has failed to state a claim. Taking all facts as true and drawing all inferences in her favor, Plaintiff's allegations that Defendants' report was false and made with malice are "sufficient to support the additional allegation that [Plaintiff] suffered severe emotional distress as the result of that conduct." *Kolegas*, 607 N.E.2d at 213 (finding it impossible to "objectively measure" the severity of the plaintiffs' emotional distress and noting that "such evidence is not necessary or appropriate at this stage, since we are only evaluating the sufficiency of the pleadings.").

5.    *Civil Conspiracy (state law)*

Plaintiff also asserts a state law civil conspiracy claim against the Mill Run Defendants and the Lincolnwood Defendants. Under Illinois law, in order to allege a claim for civil

conspiracy, a plaintiff must allege (1) an agreement; (2) by two or more persons; (3) to perform an overt act or acts; (4) in furtherance of the agreement/conspiracy; (5) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (6) that causes injury to another. *Bressner v. Ambroziak*, 379 F.3d 478, 483 (7th Cir. 2004) (citations omitted); see also *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004) ("The elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act."). The overt act or acts must be tortious or unlawful acts. See *Adcock v. Brakegate, Ltd.,* 645 N.E.2d 888, 894 (Ill. 1994).

As set forth above in the Court's analysis of Plaintiff's § 1983 claim, "mere allegations of a conspiracy" generally are insufficient to withstand a motion to dismiss. *Moore*, 754 F.2d at 1352; see also *Loubser v. Thacker*, 440 F.3d 439, 442-43 (7th Cir. 2006) (although a conspiracy need not be pled with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, "it differs from other claims in having a degree of vagueness that makes a bare claim of 'conspiracy' wholly uninformative to the defendant"). The allegations must demonstrate that the parties "somehow reached an understanding" to engage in unlawful conduct. *Id.* Here, there simply are no allegations that show an "agreement" between the Mill Run Defendants and the Lincolnwood Defendants, aside from Plaintiff's allegations that there was a "conspiracy." For instance, it is not clear from Plaintiff's complaint exactly which defendants acted in concert, whether the parties had a prior association, what agreement was made and why, and, most problematic, what specific acts were made in furtherance of the agreement. Without specific factual allegations as to each Defendant's participation in a concerted action to deprive Plaintiff

of her rights, Plaintiff has not alleged the existence of a conspiracy. Rather, Plaintiff's bare allegation of "conspiracy" is a legal conclusion and is not entitled to the assumption of truth. See *Carter v. Dolan,* 2009 WL 1809917 (N.D. Ill. June 25, 2009) (citing *Iqbal,* 29 S.Ct. at 1949-50); see also *Grooms v. Tencza*, 2010 WL 1489983, at *3 (N.D. Ill. Apr. 13, 2010) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Iqbal,* 129 S.Ct. at 1949 and *Twombly,* 550 U.S. at 555).

### 6. *Statute of limitations as to claims against Mill Run Defendants*

The Mill Run Defendants contend that certain claims and allegations are time-barred. A plaintiff's failure to adhere to a statute of limitations is an affirmative defense and therefore generally is not amenable to dismissal at the complaint stage (see *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)); however, dismissal may be appropriate where a plaintiff pleads herself out of court by establishing that a defendant is entitled to a limitation's defense (see *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (dismissal appropriate where it is "clear from the face of the amended complaint that it [was] hopelessly time-barred"); *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.2d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense")).

In Illinois, the pertinent limitations provision requires a would-be plaintiff to bring suit within two years of a cause of action's accrual. 735 ILCS 5/13-202; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). Plaintiff's complaint was filed in the Circuit Court of Cook County on June 10, 2010. With respect to Plaintiff's malicious prosecution claim, Plaintiff clearly brought her claim within two years of the date on which the case was terminated in her favor. See *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004) ("A cause of action for

malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor"); see also *Shelton v. Wright*, 2011 WL 856811, at *3 (N.D. Ill. Mar. 9, 2011). As to Plaintiff's claim for intentional infliction of emotional distress, the Court concludes that it is not clear from Plaintiff's complaint that her claim against the Mill Run Defendants is time-barred, particularly given Plaintiff's allegations that the claim is based upon, "among other things," the filing of a criminal complaint against Plaintiff on June 18, 2008. Discovery will shed light on whether or not Plaintiff's intentional infliction of emotional distress claim comports with the applicable statute of limitations and also what conduct can form the basis of that claim.

### 7. Privilege

Defendants contend that Counts I through V fail to state a claim because the counts are based on "absolutely privileged" statements made to police or in judicial proceedings. In support of their position, Defendants rely on cases which have stated that "[w]hat a witness testifies to cannot be made the basis of a suit against him, except a criminal prosecution for perjury or for a crime to which he confessed in the course of testifying." *MacGregor v. Rutberg*, 478 F.3d 790, 791 (7th Cir. 2007); see also *Morris v. Harvey Cycle and Camper, Inc.*, 911 N.E.2d 1049, 1056 (2009) (upholding "the long-standing law in Illinois that statements made to law enforcement officials are absolutely privileged"). However, none of the cases cited by Defendants discuss the application of the privilege to claims of false arrest, malicious prosecution, or intentional infliction of emotional distress; instead, all of the cases cited by Defendants apply the privilege to defamation claims. For instance, in *Bradley v. Avis Rental Car Systems*, 902 F. Supp. 814 (N.D. Ill. 1995), the court dismissed a malicious prosecution claim, but solely because the plaintiff failed to show a final, favorable disposition of the criminal case. Notably, the court did

not discuss the issue of privilege or the scope of that privilege with respect to the malicious prosecution claim, but did discuss the privilege in analyzing the plaintiff's defamation claim. Indeed, if the Court were to accept the scope urged by Defendants in this case, it would essentially eliminate the torts of false imprisonment and malicious prosecution against private citizens. Defendants have failed to cite authority to support the broad application of the privilege in these circumstances.

### B. Plaintiff's Claims Against the Lincolnwood Defendants

#### 1. *Statute of limitations as to claims against Lincolnwood Defendants*

The Lincolnwood Defendants argue that Plaintiff's false arrest and intentional infliction of emotional distress claims are time barred under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). 745 ILCS 10/8-101. Illinois local governmental entities and their employees benefit from a one-year statute of limitations for "civil actions" against them. 745 ILCS 10/8-101 ("No civil action * * * may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued").

As noted above, the statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint, "if a plaintiff pleads facts that show its suit barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995); see also *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) ("if [a plaintiff] pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court"). When the face of the complaint affirmatively indicates that the

time limit for bringing the claim has passed, the plaintiff may not escape the statute of limitations by saying nothing. See, *e.g.*, *Kathaur SDN BHD v. Sternberg*, 149 F.3d 659, 670 n.14 (7th Cir. 1998) (citing *LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1107 n.6 (6th Cir. 1995)).

Defendants maintain, and Plaintiff does not contest, that Plaintiff's state law false arrest claim accrued no later than June 18, 2008 (the date on which Plaintiff was arrested). Plaintiff filed her complaint in this case on June 10, 2010. Given the one-year statute of limitations, Plaintiff had until June 18, 2009, to file a state-law false arrest claim against the Lincolnwood Defendants, but failed to so. Therefore, Plaintiff's false arrest claim against the Lincolnwood Defendants is time-barred.

Defendants next argue that Plaintiff's intentional infliction of emotional distress claim is time-barred. Defendants assert that the claim accrued when she was arrested in June 2008, and that Plaintiff did not file suit until June 2010. Plaintiff contends that the limitations period did not begin to run until May 2010, when she was found not guilty of the charges against her.

A claim for intentional infliction of emotional distress is subject to the "continuing tort" rule: "the limitations period does not begin to run until the date of the last injury or the date the tortuous acts cease." *Feltmeier v. Feltmeier,* 798 N.E.2d 75, 85 (Ill. 2003) (quotation marks and citations omitted). However, "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Id.* Defendants contend that the overt acts pleaded in Plaintiff's complaint were when Officer Stewart arrested Plaintiff, provided grand jury testimony, and signed criminal complaints with false information, all of which appear to have occurred in June 2008.

As pointed out by Plaintiff in her response, Plaintiff's allegations of intentional infliction of emotional distress are intertwined with the allegations forming her malicious prosecution claim. See *Carroccia v. Anderson,* 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003); *Walden v. City of Chicago,* 2010 WL 5168789, at *15 (N.D. Ill. Dec. 21, 2010); *cf. Evans v. City of Chicago,* 434 F.3d 916, 934-35 (7th Cir. 2006) (rejecting argument that "the cause of action did not accrue until the termination of the state criminal proceedings" and finding that the limitations period accrues "when the plaintiff suffers injury," but not considering the intentional infliction of emotional distress claim in the context of a malicious prosecution claim). In *Parish v. City of Elkhart,* 614 F.3d 67 (7th Cir. 2010), the plaintiff was released and charges were dropped after he spent 8 years in prison for attempted murder. He sued both the City of Elkhart and a number of police officers under § 1983 and for state claims of false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. On appeal, the Seventh Circuit considered whether the district court correctly concluded that the intentional infliction of emotional distress claim accrued when the plaintiff was arrested rather than when he was exonerated. The court found that the plaintiff's claim was based, in part, on the suppression of exculpatory evidence "through all stages of the investigation and trial" and that "the conviction was an essential piece of this tort because it was the wrongful conviction that led to the emotional strain and mental anguish" faced by the plaintiff. *Id.* at 683. The court concluded that the claim did not accrue prior to conviction and that his claims would have challenged his underlying conviction. Thus, the intentional infliction of emotional distress claim could not have been brought "until his conviction was disposed on in a manner favorable to him." *Id.* at 684.

Based on the facts alleged in the complaint, Plaintiff claims that throughout the investigation and the trial Defendants suppressed exculpatory evidence that resulted in severe

emotional distress. At this stage of the case, the Court finds the intentional infliction of emotional distress claim to be inextricably intertwined with Plaintiff's malicious prosecution claim and therefore not time-barred.

### 2. 42 U.S.C. § 1983

Plaintiffs allege that Defendant Stewart did not have probable cause to arrest Plaintiffs for any of the crimes charged. Where the underlying facts supporting probable cause are not in dispute, a court may decide whether probable cause exists. See *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). Once probable cause relating to an offense is established, all § 1983 liability against the arresting officer(s) is barred, "even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir. 2006).

Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law. *Pourghoraishi*, 449 F.3d at 761 (citing *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001)). Thus, as long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In this case, the facts and circumstances known to the Lincolnwood Defendants at the time of Plaintiff's arrest appear to support a reasonable belief that Plaintiff had committed a crime. Plaintiff alleges that Defendant Daher contacted Officer Stewart and complained that Plaintiff had engaged in fraudulent and criminal activity. One way of reading Plaintiff's complaint is that, based on this statement, Officer Stewart arrested Plaintiff.

However, Plaintiff also alleges that Officer Stewart fabricated a confession or "admission" by Plaintiff. If Plaintiff's arrest was based solely on the information presented by the Mill Run Defendants to Officer Stewart, and the alleged fabrication came after her arrest, then Daher's statements likely gave Stewart probable cause to arrest Plaintiff. See *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000) ("So long as a reasonable credible witness or victim informs the police that someone has committed a crime, the officers have probable cause to place the alleged culprit under arrest."); *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991) ("As we have previously held, [w]hen an officer has received his information from some person – normally the putative victim or an eye witness – who it seems reasonable to believe is telling the truth, he has probable cause.") (internal quotations omitted). Plaintiff may still have a state law malicious prosecution claim against the Lincolnwood Defendants (based on the alleged fabrication), but Plaintiff's § 1983 claim against Officer Stewart would be foreclosed.[3] However, if the alleged fabrication was prior to the arrest and, in conjunction with Daher's statements, served as the basis for probable cause for Plaintiff's arrest, then Plaintiff may have a viable § 1983 claim. Discovery on the actual timeline of events surrounding Plaintiff's arrest, questioning, the signing of the criminal complaint, and the Grand Jury indictment should shed light on these issues. See *Carey*, 728 N.E.2d at 748 ("The determination of whether a defendant's conduct constitutes an actual request that the plaintiff be arrested, encouragement for the plaintiff to be arrested or the mere giving of information must be made on a case-by-case

---

[3] Once a reasonably credible complaint has been made, the existence of probable cause to arrest does not depend on the actual truth of the complaint. See *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998) ("Probable cause does not depend on the witnesses turning out to have been right; it's what the police know, not whether they know the truth that matters."). Officer Stewart was entitled to take Daher at his word as to Plaintiffs' actions, and his statement to police may have provided probable cause to arrest Plaintiffs. See also *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003) ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious").

basis"). On the basis of the allegations in the complaint, Plaintiff has stated a plausible § 1983 claim against the Lincolnwood Defendants.

### 3. *Malicious prosecution (state law)*

The Lincolnwood Defendants have not moved to dismiss Plaintiff's malicious prosecution claim.

### 4. *Intentional infliction of emotional distress*

Plaintiff bases her intentional infliction of emotional distress claim on her arrest, the filing of a criminal complaint against her, and the continued prosecution of her alleged crimes though trial. According to Plaintiff, Defendant Stewart signed a criminal complaint against Plaintiff without probable cause. Plaintiff alleges that Stewart did not merely rely on what Daher had told her, but that she fabricated a "confession." According to Plaintiff, "[t]his began a nearly two-year long criminal prosecution, during which time Plaintiff was put through the hell of wondering whether she was going to be found guilty for a crime she did not commit, and then be sentenced to prison time." Taking all facts as true and drawing all inferences in her favor, Plaintiff's allegations that Defendant Stewart fabricated a confession and arrested an innocent person without probable cause are "sufficient to support the additional allegation that [Plaintiff] suffered severe emotional distress as the result of that conduct." *Kolegas*, 607 N.E.2d at 213 (Ill. 1992).

### 5. *Civil Conspiracy (state law)*

For the same reasons as set forth in analyzing Plaintiff's civil conspiracy claim as to the Mill Run Defendants, Plaintiff's bare allegation of "conspiracy" are insufficient to withstand a motion to dismiss.

**IV.    Conclusion**

For these reasons, the Court grants in part and denies in part Defendants' motions to dismiss [18 & 23].  With respect to the Mill Run Defendants' motion [18], the Court dismisses without prejudice Counts IV and V.  With respect to the Lincolnwood Defendants' motion [23], the Court dismisses without prejudice Counts I and IV.  Counts I (state-law false arrest), II (malicious prosecution), and III (intentional infliction of emotional distress) remain pending as to the Mill Run Defendants, and Counts II (malicious prosecution), III (intentional infliction of emotional distress) and V (42 U.S.C. § 1983 false arrest) remain pending as to the Lincolnwood Defendants.  Plaintiff shall have twenty-eight days to replead if she believes that she can cure any of the defects identified above.

Dated:  March 28, 2010                    _____
                                           Robert M. Dow, Jr.
                                           United States District Judge